Good morning, Your Honors. My name is Ron Ferry. I represent the plaintiffs. The plaintiffs in this case are Ravenfields with beneficiary, you know, I find that, just to start out, she's not a plaintiff in the case, right? Yes, technically you're right. It's hard to figure these, but when you, the only person who can bring a wrongful death action is the person representing the estate who represents all beneficiaries, and the only beneficiary is Raven. So she's not a main party because she couldn't be, but she's embodied in the complaint. She has the economic interest in the litigation, I guess. Her interest is the only interest being litigated. There's no interest being litigated either of economic damage or loss to the father or the husband. So the only person with an economic interest in this case is Ravenfields. Ravenfields is now nine years old. And Raven was not born when the negative accident in this case occurred. She was born a year later. She was five years old when her mother died. She's now nine. She's in the court today. Ravenfields never got a day in court. And because of the rulings below, she may never get a day in court without intervention by this court. Mr. Perry, I think what I'm going to do is I'm going to let you know the issue that's of concern to me, or at least that I'm interested in. And I'm glad there are distinguished counsel on both sides. And I'm going to put this question to both of you. But since you're first, you get it first. You're ruining my notes. That's all right. You can cover my question any place you want in your argument. You can defer it. But my question is this. It seems that Oregon has some prior precedent from an intermediate appellate court, and that's Barker case or something like that. That doesn't seem too good for the claimant here on that level. But it also didn't address precisely some of the issues that you raised, the constitutional arguments that you're raising now. Both the district court judges kind of blew you away on that issue, saying they're following Barker. You've asked for certification. The question I have is, at some point in your argument, can you give us your best argument why you think Barker is distinguishable and why there are open issues that should be certified? And I'm going to want to hear from the appellee as to why they think there aren't. Well, the first thing I would say, Your Honor, to all of you, Barker case was an intermediate court of appeals. It was a court of appeals, not the Supreme Court, not the defendant. But doesn't Oregon, unlike some other states, say that if the case is settled by the court of appeals, they don't want to certify it? Oh, yes. Look, it was addressed by the court of appeals, and cert was declined by the Supreme Court, so one can say, I guess, arguably, since September. I'm asking about the Oregon certification question. I'm sorry. I'm asking about the Oregon certification statute. The Oregon certification statute, unlike some statutes, would say if it's not settled by the Supremes, you can certify to it. The Oregon one says if it's not settled by any of the appellate courts. Well, I don't think it is settled. It does address a number of questions. This case that we're dealing with involves a minor, first of all. It involves a minor in a wrongful death action, second of all. It involves a type of person that both the states of Washington and Oregon have in all their cases and even in wrongful death statutes provide special benefits and protections for. This child never had a chance to bring this action, and that's what the basis of this. It was not an adult. If you look at the combined force of the Grice case and the Mark case, what unresolved issues are there? I don't think the Grice case, as I recall, addressed the remedy part. That was your case, I understand. Right. That's why I say the combined effect of the two cases. What's still left that an appellate court in Oregon has not looked at? The court in various ways has addressed this rights and immunities and the open court or access to court questions in many contexts. They've never addressed it in a wrongful death involving a minor. They have never, ever addressed it. There is no case addressing that. What's different about a minor from the point of view of the constitutional claim? If you look at the theoretical underpinnings of those two Oregon cases, what principle distinction is there constitutionally? For a minor? For a minor. Well, the minor, who's probably the most protected type of person in our law, who in this case was denied a remedy for the loss of her mother, provides a different set of facts than I think. But with regard, the Barca case basically said that going back to 1857 or whenever, that there wouldn't have been a remedy because there would have been a statute that was essentially a statute of repose. Now, why doesn't that apply here? Yes, it does say that. Okay. And wrapping in the fact that this is a minor and a wrongful death case, how could the result possibly be different? Well, besides the issue that all cases can be in the Supreme Court of the state of Oregon or any state, or this court can take a fresh look at these decisions, I know that this is what the court said in the face of that decision. No, I'm asking this in the context of the certification issue and the certification statute. What is not settled in Oregon with regard to this matter? Well, I think you said Barca doesn't cover a minor, so you – Well, I mean, that's been my primary thrust of this case in our appeal, that we're dealing with a minor. I know, but I need to understand. So you need to give me a one-sentence argument about if you were – if we were to certify what we would say about why Barca wouldn't apply to a minor. It has to be an open question. So what is there about the fact that she's a minor that makes – that arguably makes Barca not applicable? Well, because in this case, this child never had an opportunity to bring the case at all. She could not bring the case prior to her mother's death, and she couldn't bring it after her mother's death. I mean, there is no – But that, in a way, goes back to the original question I asked when you stood up and said, this is a suit for Ravenfields, because it's actually a suit for the estate of – Yeah, okay. But wait a minute. But that mattered conceptually because she – In fact, the mother not only had a cause of action but brought a cause of action. So – Yes. Right? The mother had a cause of action and did bring a cause of action. And she brought a cause of action. And therefore, if this is essentially a lawsuit for her estate, the – it seemed to me, thinking about it, that there is already money in that estate that represents this interest, no? No, there really isn't, Your Honor. And I think that's unassailable. If you take a look, I will refer you to 30.020, which is the statute. It says whose beneficiaries are and what types of benefits may be accorded. If there was no action that we brought before, certainly the mother and the father could have brought an action. But those are not – those have been resolved. The child was never a part of that. Subsection D, that's 2D, states that the purpose of awarding damages in this case is to justly and fairly and reasonably compensate a bunch of people but also the children for the loss of society, companionship, and services of the seed. That is the issue here. That's the only issue. No lost income, no other form of damages, no loss to the husband. So the child is the basis of this. And, Your Honor, in Barkey, they really – the Barkey decision did not deal with the accrual time and the medical malpractice of statute of limitations or the statute of repose directly. And, in fact, it's the plaintiff in Barkey who, herself and his wife, distinguished herself from beneficiaries in the wrongful death actions initiated after a death, a machinely death conviction the court hung upon. I have read all these cases, Your Honor. There's no question that the issues of the constitutionality of the state statute have been addressed in various contexts. And there's a constellation of holdings, none of which apply to this case. And that's why I think that this case, for the very first time, presents directly to the court these issues of the constitutionality of the wrongful death statute, which elapsed before it approved, and the application of the statute of repose, which, again, denied a claim before it approved. There is a rational way to apply this. As I understand your argument, you're saying you think you could distinguish the prior precedent so that there are open questions, and then you've got Oregon, you've got this position, a strict position on this Oregon statute is kind of out of tune with what most states do. So maybe the state supreme court would interpret the statute or the constitution to give you a remedy. Your Honor, I can say without, I don't think, anyone stating differently or any research that there are only three states in the country that allow the statute of limitations to accrue after the death. Three states, Oregon is one of them, okay? Three states. To do what? I'm sorry, I didn't understand. For statute of limitations and wrongful death actions to approve. First starts to run. Before. To accrue. I'm sorry, allows the statute of limitations to elapse, okay? Before the death. Before the death, frankly. Here it accrues by one reading of the statute, it accrues on the date of the injury, okay? And then it would elapse three years, in this case, three years later. She died five years later. There was no possible way any action could have been brought by anyone for wrongful death prior to the death. And after the death, both the statute of limitations in three years and the statute of repose had elapsed. It's a very incongruous. Now, is it also essential to your argument then to establish that there, thanks to the remedy question, that there was a wrongful death action in Oregon in 1857? Is that part of the issue here? I'm sorry, I didn't understand. That there was a wrongful death, a common law wrongful death action. Well, there's more than one argument here, you're right, as a lawyer looking for a remedy for his client. I'm asking, without that, can you possibly prevail? Do you have to establish that? No, we can prevail without that, but it has to be, the court has to address this situation of the child, okay, and then reinterpret the statute and the limitations of the statute and whether it can, under any concept of fairness or constitutionality, elapse before the child could bring the action, which it did in this case. I'm still having a hard time understanding why, just a minute, I'm having a hard time understanding why the child matters. The same thing could have happened to a non-child, right? A spouse, for example. A spouse. Yes, could have, but the spouse or the adult could take care of their own affairs. How, if they couldn't bring the wrongful death action until... Oh, I'm sorry, because the Barkey case did involve an adult. Yes, it can happen to an adult also. I mean, you can't bring it before, and by the statute, you can't bring it after, so it could happen to either class. This one happens to be a minor. That's why I think, I believe, and I've stated in my brief, that it puts the issue on the, as poignant as it can be. It's poignant, but it doesn't seem legally relevant. Well, I suppose, I mean, that has to be a decision to make, but all the cases and all the statutes talk about the vulnerable status of children, protecting children and their losses, and this child had a loss of her mother and never had her day in court. The question, then, is really, from a legal point of view, is whether common law in Oregon in 1857 or the Oregon Constitution recognizes a different status for a minor dependent than for any other beneficiary of one's estate. Well, that certainly isn't, we have to concede that that is not clear. However, all of the literature that one reads now from the Moraine case in the United Supreme Court forward is that the common law of the United States adopted in all the states really did have a wrongful death action, that a wrongful death, the Moraine case was the first American case, the United States Supreme Court declared that there was a common law cause of action for the death, for wrongful death of a spouse. It was the first time they did an in-depth review in that case of the derivation of the rule that there was no common law wrongful death action declared that was erroneously applied from one case. Now, based upon that, a number of courts now, I think about 10, and New Jersey being the most recent, has determined and declared for the basic same reasons we're here today, to allow a remedy for wrongful death. I guess one thing that needs to be pointed out from my point of view here is this. The issues are different if you're arguing to the Oregon Supreme Court or to us. I think so. If you're before us under the Oregon certifications, I mean, for us to certify, we have to say there's an issue left open by the intermediate court of appeals that wasn't reached or hasn't been decided. Otherwise, we're not supposed to certify. Now, you know, if you get in front of the state supreme court, if we do certify, you know, you can argue to them that your case is distinguishable in some ways from Barka, but you can also argue Barka's wrong, and taking the case in the context of a child, they should re-examine their law and, you know, get in step with the country. But we can't really get there unless we can find an issue that's not decided by Barka. Well, let me say something. Under Washington law, you have a cause of action. Is that right? Under Washington law, we have a cause of action. Your Honor, I mean, I really look at this. We could also get there from your perspective, but not from your opponent's, if we felt that Washington had more significant context. But right now, I'm assuming that Oregon has the most significant context. Well, Your Honor, two judges found that by independent analysis. I can argue that they could have gone the other way because so much occurred there and she died there. But let me say this. Even under Judge Zille's ruling, okay, where he found that Oregon law applied, okay, he did not apply under the conflicts analysis the escape clause. The escape clause basically in its fundamental law, I think it's called the fairness. I understand what it is. So the problem with the escape clause for your side, I think, at least in my mind, is the escape clause gets you by the statute of limitations provision, but it doesn't. I'm not sure it would apply to the statute of repose. Well, again, I would say it does. If you read, again, Your Honor, there's only one case. The Rice case is the only one that's dealt with this. It's been roundly criticized. It still exists. It was roundly criticized by other decisions after that and by legal scholars in the state of Washington, elsewhere, that lowered the article for its not quite proper use of the conflicts analysis because in the conflicts analysis you're supposed to not only identify the substantive law, the wrongful death action or the statute of limitations, the substantive law in that case was private liability in the state of Oregon. But then the statute of repose should have been given a separate analysis and a separate analysis under the conflicts analysis and a separate application of the escape clause. Escape clause is meant to provide a remedy when the only defense would be or where going to the other state would have eliminated the cause of action. And I believe if the uniform conflicts law is applied and a separate conflicts analysis may focus the wrongful death statute, and that's done, when we say that Oregon law applies, the escape clause clearly should apply, meaning you would have the Washington statute of limitations. Then you apply the same analysis to the statute of repose with the idea of whose interests are involved and what the context are with regard to that. And the interests of the state of Washington are very high in preserving the rights to a remedy for all of its citizens, whether they're minors or adults. Could I ask you a conceptual question about Washington law? And under Oregon law, the ability to bring a wrongful death action is really derivative of the right of the deceit. They would have had to be able to bring a negligence claim had they survived. Is the Washington law similarly derivative of the right? It doesn't have that kind of wording, but I think if you're referring to that clause, I believe that that applies to a survival action. To a survival action and not a wrongful death action. That's a wrongful death action. I'm going to tell you that in 35 years I've got to lay both statutes down. I know. They're very confusing. And read them to understand them, but that's my understanding. Okay. And now I have another interpretation. Go ahead. Can I just give you this? This is one. And this interpretation is within the statute itself. I'm trying to make sense out of RC or the ORS 30.0 2 0 1. Okay. Which says in the first clause that actions shall be commenced within three years after the injury causing the death. And I think that's unfortunately pretty clear. So go to the second one to secure discovery cause. That says the date of discovery of the cause of death was on the date. That was on the next one. The date it was discovered. Okay. So three years from the date of injury causing death was discovered. Well, you couldn't discover. Let's talk about the day before she died. There was no there was no way to discover an injury causing death because she was still alive. So when you look at the discovery portion of this, that's three years from discovery. Okay. The date of discovery of the injury causing death was on the date of the death. You're saying you couldn't just be the discovery that the injury. There was an injury that it was a misdiagnosis. Yeah. Because the statute says the date of the discovery of injury causing death. Those are three words. Is there a law on this question? There's no law. There is no law. There's no interpretation of that. The operation of the Oregon discovery clause in its statute of limitations is an open issue in Oregon law. I believe it is. It says to quote and I'm looking here. The action shall be commenced within three years after the injury causing the death of the decedent is discovered. Okay. So let's say that let's assume that is open for sake of argument. Yes. And I don't remember if the Oregon certification statute requires that, but practically either requires it or it's something that we normally don't do. So that unless there's an answer to the statute of repose, I'm not sure why we would certify that the operation of the discovery clause in the statute of limitations. Because then if you look at the next clause, it says it's got its own statute of repose. And it states here that in that the action may be commenced no later than the earliest of three years after the date of the death of the decedent. No later than the earliest of three years after the death of the decedent. So if you say that was the death of the decedent, which was January 16th, and that was the date of the discovery of the injury causing the death. What about the next clause, the repose clause? I would say I think what you have is a conflict between these two statutes of repose. A conflict between the discovery provision and the provision on repose that should be interpreted by the Oregon Supreme Court. Your Honor, the kind of contemporaneous with the Barkey decision, the decision was made in the Washington Supreme Court in the DeYoung v. Providence Hospital case, which involved a minor and an eight-year statute of repose. And the court went through a rather extensive analysis and and declared that under the Constitution, the state of Washington is really parallel to the state of Oregon. They were driven from each other when they made it that the law used to be called the Oregon Territory. I think that's what it would arise from. Anyhow, they declared that it was unconstitutional. So that statute of repose of eight years was wiped off the books. The other way in the Washington, in Washington, in Washington, this is 1999. Let me let me ask you to just cover another issue briefly. If the claim of if the interest of the minor in the estate is derivative of the. Of the mother's interest. The dead mother. And she's already sued and released her claims in a settlement. And does that wipe out the wrongful death action of a minor? The answer is really very good. I mean, it's really very clear, not only in the state of Washington, but that it does not for a whole host of reasons. I mean, number one, a claim of a of an estate or of a minor can only happen with the approval of the court. It can't happen any other way. A minor's claim cannot be dismissed, settled or resolved without court intervention. A claim cannot be made without an estate or a personal representative appointed. Is the minor alive when the mother settled the claim? The minor was up three, I think, when the mother and father settled their claim. The child was specifically kept out of the lawsuit because you got to understand at that time the child had no loss. The mother was ill. The child didn't even know she was only one, two and three. And the mother spent, she was a doctor, but she arranged her schedule so she spent an inordinate amount of time with her child to make those years productive. It was thought that she was going to survive. But unfortunately, the metastasis took a turn sideways and she died. But the child had no loss, had no loss until mom died. I mean, the last couple of weeks, maybe you could say she was in the hospital regularly at group health. But as far as the wrongful death, the loss of companionship, guidance, that didn't occur until she died. And that's why her claim really couldn't be brought to me. Counsel, you have exceeded your time significantly. I'm done. Thank you very much for your argument. Ms. Hughes? Thank you, Your Honors. May it please the Court, Lindsay Hughes, appearing on behalf of Legacy Health System. In response to Justice Gould's question, give you my best arguments why certification is not required and is, in fact, inappropriate in this case. There are a number of reasons. One, and we address it in our brief, even though plaintiff takes the position that it is now, this case is not alleged as a wrongful death, a common law cause of action. This claim is a claim on behalf of the estate of Laura Fields. That's the way it was originally filed. That's the way it was decided. We know from the Oregon Supreme Court and its clear decision in Storm v. McClung that a claim for wrongful death under ORS 30020 can be limited in any way the legislature sees fit and that the constitutional analysis plaintiff relies on simply doesn't apply. Now, the Court might ask, well, how would someone bring a wrongful death common law cause of action? My response is something we see regularly now in the Oregon courts as plaintiffs attempt to create this new theory of relief. Let me ask you a question. If that's really the dispositive issue here, that they didn't make an Oregon common law claim, shouldn't they have been permitted to amend their complaint? They didn't seek leave to amend the complaint to do that, Your Honor. The issue at the end of the briefing about amendment to the complaint had to do with jurisdictional questions, whether or not there was sufficient context against legacy. And at the same time, the only amendment sought was before Judge King here in Oregon, and Judge King, although he said they filed it without my permission. I thought Judge King said amendment would be futile. He did, Your Honor, for the purposes of the amendments that they requested be made. But normally when we, if we normally, I'm not saying in every case, but I think normally if we say on one of our appeals that a complaint failed to state a cause of action and we give reasons why it didn't, we often permit leave to amend or a district court often does if there's some viable theory that wasn't pleaded. So I guess you might be right that that's a technical showstopper. But at least for me, I'd like you to go past it because, you know, it may be that the common law claim is implicitly pleaded in the statutory claim. Maybe it's not. Maybe they should have had an opportunity to amend. Maybe not. But maybe if you could cover the other issues. I absolutely will, Your Honor. That was just the first in my long list. I kind of assumed it was. With distinguished counsel on both sides here, we're getting a lot to think about. My second argument, in addition to the failure to bring a common law claim, is that although plaintiff contends that none of the cases under Oregon law apply, in fact, all of the cases that have been decided on these issues under Oregon law apply. The first is the question whether or not there existed a claim at common law or a claim in 1857 for common law wrongful death, such that any statutory limitation on that claim runs afoul of Article I, Section 10. The answer, and it's been the answer in Oregon since at least 1891 and arguably before that, is that, in fact, there is no common law wrongful death cause of action. We know that from a host of decisions, including Grist and including another decision, Kilminster, issued by the Oregon Supreme Court, which we addressed in our briefs, in which the answer is clearly given. There's no open question about that issue in Oregon at the moment. Certainly plaintiffs make the argument that the law may have been incorrectly decided or that the law should be changed, but this panel has already pointed out that that's an argument that might be appropriate for the Oregon Supreme Court. It doesn't bear on whether or not the law that exists has been clearly decided. Counsel, in the release, in the settlement of Dr. Fields' case during her lifetime, she and her husband purport to release, among other things, any wrongful death claim explicitly that's listed in the settlement, as I recall. Yes, it is, Your Honor. In the release document. Is that something that can be released? Is that hers to release, or is that something that arises in some other way so that the estate or beneficiaries or survivors are not bound by that in some way? It is absolutely a right that may be released, as it was in this case, by the holder of the claim for the original injury. In answer to Judge Berzon's question earlier, if we were to decide the issue for other than statute of limitations grounds, would she have had a claim, would plaintiff in this case have had a claim? The answer in Oregon and Washington is the same. It is a derivative action. The problem I have with that argument, just to let you know how I'm addressing it as one judge, is it seems to me that argument's a Rule 8c affirmative defense argument, that if the suit proceeds, you interpose the release as an affirmative defense, and you and Mr. Perry argued to beat the band about whether the release is enforceable, but I don't see why we would address that at this stage. Well, and the question Judge Graver asks, Your Honor, is whether or not it's a derivative claim, and the response, whether raised by affirmative defense or, in this case, by motion to dismiss because of the statute of limitations is yes, that it is derivative. In Oregon ---- But it was dismissed on the grounds of the statute of limitations, of the statute of repose, not on the grounds of the release. Well, but the same ---- And that issue wasn't addressed by the district courts. I don't know that Judge King expressly addressed that in his decision, Your Honor, but the argument was made there, and the argument ---- I don't think he addressed it. I read his opinion. I read both opinions pretty carefully. I don't think either opinion addressed the release as a basis for the dismissal. You're correct about the release, but there's another issue that I think the Court needs to be aware of. The Oregon statute has within it clear language that says an action that could have been brought had the decedent lived. That was the issue in question in Kilminster. That was the reason for my question earlier. I understand that. But the district courts didn't rely on that. We can normally affirm for any grounds supported in the record, but it's not that clear to me that that would release ---- that would operate to defeat the claim of a minor child. It does in this situation, Your Honor, where because of the limitations period, regardless of whether a claim had been brought and regardless of whether that claim had been released, that claim still was barred, and the holder of the claim, Mrs. Fields, would not have been entitled to bring the claim had she lived by virtue of the statute of limitations. If you're correct, and you may or may not be on that, am I right, that's an issue that was not addressed by either district court, and that if that were the ground for the decision, we should be sending that back to them to look at first under our normal procedures? Well, in my analysis, Your Honor, Judge King determined that the statute of limitations barred the claim. Was that determination broad enough to encompass a further analysis that because of that, the derivative nature of any subsequent claim for wrongful death also was barred because the claim had been extinguished by the statute of limitations? Well, he said that it was barred by the statute of limitations or the statute of repose, I thought. I don't think he relied on the release, and I don't think he relied on it being a derivative claim. And my argument is twofold, and there is the release issue, but in addition, the claim was also barred by virtue of the plain text of the Oregon statute because any claim by Laura Field at that time also was barred. Counsel, why shouldn't Washington law apply, which would not bar the claim, at least without looking at the release, would not bar the claim on the ground of the statute of repose? Washington law should not apply for many reasons, and both Oregon and Washington apply the substantial interest test, and both federal district courts in this case analyzed the interests that were at stake and held that because the injury occurred in Oregon, which is something that the plaintiff agreed with in the district court before Judge King. He didn't rely on a death in Washington, but he agreed that the injury occurred in Oregon. Injury occurred in Oregon. The conduct occurred in Oregon. The issue is medical care that's provided in Oregon. The additional information that was before the Washington district court about the litigation. This is her awful death action. She died in Washington, and the consequences of her death are going to be felt in Washington. The consequences of her death are felt in Washington, and we know from Washington law that that fact alone is not significant enough to outweigh another state's interest in regulating conduct that occurs within its border, and that's the Rice decision. Rice is pretty good for you on that point. I agree with that. So I tend to think that your client has the better of the argument on the most substantial interest kind of at the outset. But I don't think that resolves the escape clause. How do you deal with the escape clause and with the argument asserted by Mr. Perry today that, okay, he says the escape clause gets you by the statute of limitations first. And then I said, what about the statute of repose? And I think that he argued that that would require a separate interest analysis, and that might be correct because once you decide that Washington's statute of limitations applies, then you've got the interest of Washington in a claim that you're recognizing under Washington, statute of limitations at least. I don't know. It's very confusing to me how you balance how that interacts with the statute of repose. Two response, three responses perhaps to that, Your Honor. First, we have Rice, which held that that's not the analysis that applies. Second, we have the provision, the application of the escape clause, which says a court may apply a different statute if it determines that the statute being applied or that should apply by the application of conflict of laws is unfair. It seems pretty unfair to me. Maybe I'm wrong in that, but it seems unfair if it wipes. I'm putting aside the issue, which I think you've argued, that the child has no interest because of the mother's release. And if that's true, I guess that's the end of the case. But procedurally, it seems to me, that issue technically isn't before us because that's an affirmative defense. So it seems to me you get there later. But still, apart from that, if that's not correct, it seems kind of unfair that a claim would be extinguished before it arises. And like unfair in the sense that only three, if Mr. Perry is right, and I think the brief said this, that only three states out of the 50 United States have such a rule. And let's look at that for a moment, Your Honor, in terms of whether or not the statute is fair. Here in Oregon, when the occurrence language was adopted, that's not a new rule in Oregon. And from the point of injury has been the issue that's been before the court in numerous wrongful death cases for a number of years. And you look at a situation like this. I haven't addressed yet, but Plankett continues to try to make this case as if it's not. It's not an undiscovered latent disease case, which, you know, addresses a number of additional arguments they make. But here, this is a case in which the person who allegedly received the misdiagnosis knew about the harm, knew about the injury for many years. And the question is this, Your Honor. Is it unfair for a child or other beneficiary, a parent in Kilminster, what have you, is it unfair to preclude a later claim by one of those individuals when the person who was. And the ill person could make their own claim. Pardon me? The sick person could make their own claim, you're saying. But if they didn't make their claim. And the issue about unfairness is whether or not they knew about it, they determined not to sue upon it for whatever reason, or as in this case they did, is it then unfair to prevent by application of a statute of repose, which bars stale claims, some later claim by some other individual based on the same conduct, which has been known. So taking it out of the particulars of this case, if somebody's run over by a bus today, and that injury turns out to cause their death 12 years from now, nobody's ever going to have a wrongful death claim about that running over by the bus. But your position is that's not unfair because that person had an opportunity to make a claim for the injury, including and loss of consortium and other people could make a claim for that injury. That's true, Your Honor, and I think Oregon. Could anybody else, could the child have sued? First of all, if the child had any damages over that period, it wouldn't have been for the death of the mother, but for the illness of the mother, which is a different injury, right? Did the child have any claim during that period? For injury to the mother, I'm aware of no claim in Oregon that exists for that, Your Honor. So the child, in fact, couldn't have sued. I mean, her injury couldn't have been redressed. Correct, Your Honor. But the question is whether or not the child has a cognizable injury by virtue of a misdiagnosis of a mother. Well, are you suggesting that if this was within the five-year period of repose, she couldn't have brought the cause of action? The child? Well, the estate, as it is. I'm sorry. If it were within the five-year period of repose, could the child have brought the action? Her wrongful death. No, because the claim was also barred by the limitations period that's written into the statute three years from the date of injury or should have discovered the injury or discovery of the injury. So the claim was already barred. The wrongful death claim was already barred by application of the limitations provision of the statute. So if she had died between year three and year five, such that there wouldn't have been, your position is that there wouldn't have been a cause of action at all? Well, it depends on, we need to clarify when we're counting from. Counting from the time of the misdiagnosis. Counting from the misdiagnosis, which was not discovered until 1996. I think the point is that there were three years from the discovery of the misdiagnosis in 96 in which to bring a claim. But not a wrongful death claim by the child. No. Not a wrongful death claim because the mother didn't die until much later. So the bar arises from two provisions of 30.020. The first is the limitations provision. And the second is the repose provision, which is expressly incorporated through 12.110. The legislature was clear, the Oregon legislature was clear in incorporating various repose provisions in that statute. They say that earlier of either three years from the date of death or any other applicable period of repose that applies by virtue of a variety of different statutes. I understand that your opponent's argument in this last point, and I could be wrong, fitting all the pieces together isn't that easy, is that in fact the limitations period didn't apply because it had to be commenced within three years after the injury causing the death and until the death occurred, you can't even start counting that. Is there any case law about that? Well, there is. There is case law, and I refer the court to the kind of tolling issue that I think he's referring to. No, it's just a tolling issue. He's raising a statutory interpretation issue. Of 30.02071. That the Oregon limitations provision should be interpreted so that the time runs from, quote, accident causing death, close quotes, so it doesn't start to run until the death. I believe that, and I'm going to refer the court to Eldridge v. Eastmoreland Hospital, which I believe addresses that issue. It also doesn't make any sense because it says within three years after the injury causing the death of the decedent is discovered or reasonably should have been discovered by the decedent, so only the injury could have been discovered by the decedent. The death couldn't because the person is dead. Well, it says by the decedent or. But if you just look at it logically, it has to be the injury that's discovered or reasonably should have been discovered, not the death itself. And Oregon case law has consistently addressed the injury component to mean the act or omission itself, the misdiagnosis in this case, if you will. So as it applies, not the death, but the injury. And and, you know, the additional argument and I'll have a couple more minutes. Yes. But the additional I think there are additional additional reasons, additional case law that we haven't even begun to address. The answer is this question that I threw through the level of application. When I say that all the Oregon cases make clear what the result is, we have. I think I know the answer. I have one more question. I think I know the answer. I'm not sure. The Rice case has not been adopted in Oregon. Is that right? Well, the proposed part of it, for example. Pardon me? The statute proposed part of it. Rice. I don't believe the decision. The decision in Rice is not the law. The rule of Rice has not been adopted in Oregon as opposed to Washington. Is that right? Maybe I'm missing the points, the court's point, but I think that Rice application was the conflict of law analysis and the substantial factor test. And that's the same test. But what about the ruling about the fairness escape clause and not applying to the statute proposed? I don't know of an Oregon case that addresses that. In other words, is I think ultimately it doesn't matter because it's the law of the forum state that matters. That's correct, Your Honor. And that's why it wasn't an issue before the court in Oregon. And that was an issue in Judge Zille's court, as I understand it. Yes. And you're saying it wasn't an issue before the court for the District of Oregon. Correct. And I come full circle to our discussion about Judge Zille's analysis in that regard. I was distracted by another argument. But when I referenced previously that the court has discretion to determine that a statute is unfair and we went off on another direction. In this case, the court, Judge Zille expressly determined that there was no unfairness by virtue of application of the Oregon statute. So we have that additional component. Every once in a while. It's pretty rare. I've known Judge Zille for so long, even when he wasn't a judge and I wasn't. But every once in a while I disagree with him. I don't know if that gets me there on unfairness. If I can take one minute to wrap up. Would you sum up, please? We've talked about the wrongful death analysis, the privileges and immunities analysis, the court's reliance on Barkey, which plaintiff admits is a problem to his entire case. But in addition to Barkey and any issue about that being a court of appeals decision, Barkey relies on Supreme Court decisions that still apply and present clear rules as to what the analysis is in this case. Seeley, Davis, Jones, all are discussed in the briefs. And by virtue of the courts, we haven't talked about courts from other jurisdictions yet. I'm going to go there just briefly. I think you probably are out of time to go there just briefly. Thank you, Your Honor. I sure do appreciate the time. Thank you. Both counsel exceeded their time by about the same amount. So we're out of time. We appreciate the arguments of both parties. The case just argued and submitted. They were very interesting arguments and obviously both of you spent a lot of time preparing. That brings us to the final case on the calendar today, which is Gisbrook v. Garnhart. Deja vu all over again for me, but not for my colleague. I'm glad you were appreciating the we're very grateful to the district court for giving us a home away from home while the Pioneer Courthouse is being repaired. Thank you. Aren't the Ninth Circuit going to occupy the old courthouse? Yes. Well, the Seattle judges will go to the Seattle courthouse. We'll go back to the Pioneer Courthouse here in Portland when it's finished in a year and a half or so.
judges: Graber, Gould, Berzon